**EXHIBIT 5**

**JAMES MILLER, PE, PHD REPORT**

# Miller Engineering, Inc.

www.millerengineering.com

**Main Office Address**
2392 Fuller Court
Ann Arbor, MI 48105

**Western Office**
Portland, OR 97016

**Telephone**: (734) 662-6822
**Toll Free**: (888) 206-4394
**Facsimile**: (734) 747-9712
**E-mail**: miller@millerengineering.com

**Principals**
James M. Miller, PE, PhD
  Professor Emeritus:
  Engineering, Univ. of Michigan
Mark R. Lehto, PhD
  Professor:
  Engineering, Purdue University
David R. Clark, PE, PhD
  Professor Emeritus:
  Engineering, Kettering University

**Managing Engineer**
Adam M. Olshove, PE, MSE
  Mechanical Engineering
**Lead Project Engineer**
Alyssa L. Blunt, EIT, BSME
  Mechanical Engineering
**Engineering Associates**
Jeffrey D. Rupp, MSE
  Mechanical/Systems Eng.
Sarah A. Snyder, PhD, EIT
  Materials Science Eng.

**Project Engineers**
Kelley S. Lodge, MSE
  Packaging / Human Factors
Jackson D. Troin, BSME
  Mechanical Engineering

**Technical/Research Staff**
Shirley Ampulski, MILS
Erinn Promo, BA English
Emily Benjamin, BS
  Environmental & Chemistry

---

TO:   Ms. Tamara C. Jordan                                              May 20, 2022
      Wood, Smith, Henning & Berman LLP
      1805 Shea Center Drive, Suite 200
      Highlands Ranch, CO 80129

FROM: James M. Miller, PE, PhD

RE:   **Haslett v. Keirton, Inc., et al.**                              **JMME # 095**

## Initial Report

### I. Scope

I have been retained in this matter by Wood, Smith, Henning & Berman, LLP, representing Keirton Inc., to review the circumstances surrounding an incident that occurred on September 18, 2021 involving a hand injury to plaintiff Marcie Haslett. The injury occurred while Ms. Haslett was using the Keirton Twister T2 Marijuana Trimmer ("the subject Twister machine") at her place of employment at Los Suenos Farms in Avondale, CO.

Materials received or reviewed to date include: complaint and responses; interrogatories; disclosures; court filings; medical records; photos of the subject machine; video of the incident; injury photos; owner's manuals; invoices; email communications; Ms. Haslett's employee file; Ms. Haslett's deposition; and Plaintiff's Expert's report.

Additional depositions and discovery materials are expected to be available after this initial report has been issued. The future availability of such discovery from employer representatives, fellow employees, and the machine manufacturer's representatives will undoubtedly require consideration which will lead to revisions and additions to the material, conclusions and opinions expressed herein.

Based on my review of the materials, and upon my education, training, and experience, I formulated several opinions, some of which are set forth herein. These are stated with a reasonable degree of professional and scientific certainty to extent possible at this stage in the discovery.

I intend to amend and supplement this report as future discovery materials are provided, as additional research is completed, and in conjunction with future oral testimony.

EXHIBIT 5

EXHIBIT A

## Miller Engineering, Inc.

### II. Relevant Parties Identified to Date

**Marcie Haslett** – The injured plaintiff; employee of Los Suenos Farms, LLC.

**Keirton Inc.** and **Keirton USA Inc.** – Defendants, collectively referred to as "Keirton." Manufacturer of the subject Twister T2 Trimmer.

**Los Suenos Farms, LLC** – Place of employment of the plaintiff; owned and operated the subject trimmer. Located in Avondale, CO.

Below are additional parties whose roles and knowledge regarding the subject incident are to be clarified in what I believe to be future deposition testimonies:

**Bob DeGabriel** – Owner of Los Suenos Farm.

**Chris Johnson and Ketch DeGabriel** – Employees of Los Suenos Farms who may have been involved in the training of Plaintiff on the subject Twister machine.

**Heather Gonzales, Tamra Nutt, and Mayza Nazario** – Employees present at the time of incident who may have information concerning the subject incident and the subject Twister machine.

**Melanie Fire** – Employee of Los Suenos Farms; supervisor of Plaintiff.

**Jay Wheeler** – CEO of Keirton Inc.; designed and developed the Twister T2.

### III. Site Inspection March 31, 2022

A joint site inspection was held at Los Suenos Farms on March 31, 2022. Present at the inspection were representatives for both Keirton and Plaintiff Ms. Haslett, as follows:

1. Attorney Tamara Jordan – representing Keirton (Wood, Smith, Henning & Berman)
2. Engineer Alyssa Blunt – representing Keirton (Miller Engineering)
3. Attorney Mike Thomson – representing Plaintiff Haslett (Purvis Gray Thomson)
4. Expert Stanley Jaworski, P.E., CFE, CVFI – representing Plaintiff Haslett (Robson Forensic)
5. Employee Chris Johnson of Los Suenos Farms
6. Employee Melanie Fire of Los Suenos Farms

During the inspection, photos and measurements were taken. The subject machine had been moved to a room separated from the trimming processing area for the inspection. It was turned on briefly to observe the operation without product processing.

### IV. Overview of the Twister T2 Trimmer

The Twister T2 is a commercial cannabis trimming machine. It trims cannabis by moving the rough-trimmed plant material through a rotating tumbler with a helix blade underneath. The frame of the machine is positioned on a sloped surface so that gravity pulls the plant material through the tumbler. An attached vacuum pulls the plant material toward the edges of the

# Miller Engineering, Inc.

tumbler so it can be cut by the rotating helix blade. The vacuum also extracts the cut leaves for collection, leaving behind the desired bud in the tumbler. The machine typically has a conveyor belt on the intake and discharge. Alternatively, it may have an intake hopper.

## V. Accident Overview – September 18, 2019

On the day of the incident, September 18, 2019, Ms. Haslett was supervising employees who were operating the Twister T2 Trimmer at her job at Los Suenos Farms, LLC. She was supervising approximately 10 employees in the area working on a line of trimmers. She appears in the photo below to be standing in the middle of other employees. To her right, an employee was feeding material into the machine. To her left, there was another trimmer with an employee in front of it, and then further to her left was a group of employees at the outlet of the two trimmers.

A video taken on the day of the incident shows Ms. Haslett immediately before the injury took place. At some point in her supervisory role, she reaches into the back of the machine, near the vacuum. She then pulls her hand out and is seen exiting the frame of the video, followed by one of the other employees.

The set-up of the farm operations in shown in **Figure 1** below, which is a screenshot taken from the video taken on the day of the incident.



**Figure 1**. Operations at Los Suenos Farms, LLC at the time of the incident.

There appears to be three connected trimmers on the line near Ms. Haslett. The subject trimmer appears to be the first. This is demonstrated in **Figure 2** below.



**Figure 2**. Demonstration of the set-up on the line of trimmers near Ms. Haslett.

Page 3 of 11

EXHIBIT 5

EXHIBIT A

# Miller Engineering, Inc.

## VI. Ms. Haslett's Actions at the Time of Incident

Ms. Haslett testified that at the time of the incident, she was cleaning off debris that builds up on the sides of the Twister, including on the back-side vacuum shroud. This was something that she had done "countless times before." (Haslett Deposition, pgs. 84-85).

Ms. Haslett had watched Los Suenos employee Chris Johnson and his uncle "sweep" off debris with their hands during operation and was never instructed that the machine should be turned off while clearing the debris. (Haslett Deposition, pgs. 99-100).

Clearing off debris was something that Ms. Haslett did consistently during the course of a shift. She testified: (Haslett Deposition, pgs. 107-109)

> "...nobody specifically instructs you to do it. You just do it because you see that...it's not enhancing the performance of the machine so it gets done. It's not something that's specifically, oh, you need to do this...it's just something that got done because we saw that...it wasn't allowing the machine to function properly if it didn't get done."

She stated that if she didn't do this:

> "<u>The machine doesn't function properly</u>...The tumbler gets gummed up. Remember I told you marijuana is very sticky, so <u>with all of that debris on the side of it, it just causes it to get gummed up quicker.</u>" (emphasis added)

**Figure 3** below demonstrates the approximate position of Ms. Haslett relative to the Twister machine just before her accident. She was standing on the front side of the machine. The tops of the rotating helix blades were rotating towards the front of the machine, and towards Ms. Haslett, and the top of the tumbler was rotating towards the back of the machine. The bed knife is located on the front side of the machine.



**Figure 3.** Graphic demonstrating Ms. Haslett's position relative to the Twister T2 at the time of incident.

EXHIBIT 5

EXHIBIT A

## Miller Engineering, Inc.

The photo in **Figure 4** below was taken during the site inspection and was intended to simulate the approximate actions of Ms. Haslett which caused her hand to be in the vicinity of an ingoing nip point on the machine.



**Figure 4**. Photo taken at site inspection of Miller engineer Alyssa Blunt portraying where Ms. Haslett's hand would have been just prior to the subject incident.

### VII. Keirton Warnings and Instructions in Twister T2 Manual

Warnings and instructions for the subject Twister T2 Trimmer can be found in both the product manual and on-product machine labels.

A manual for the Twister T2 Trimming Machine was provided to us as part of Los Suenos Farms' discovery responses. The manual is undated, but is assumed to be current to the time of manufacture of the subject machine. Los Suenos Farms had this manual available on-site and Ms. Haslett testified that it was provided to her at the time of her training. **I have pointed out in the following sections some of the "Important Safety Instructions" she would have been expected to read and follow throughout her employment and in performing her job functions.**

The Twister T2 manual includes the following table of contents:

| | |
|---|---|
| *Important Notice* | 5 |
| *Important Safety Instructions* | 6 |
| *Operation* | 8 |
| *Adjustments* | 15 |
| *Transport* | 19 |
| *General Maintenance* | 20 |
| *Cleaning* | 21 |
| *Specifications* | 22 |
| *Troubleshooting* | 23 |
| *Warranty Statement* | 25 |

EXHIBIT 5

EXHIBIT A

## Miller Engineering, Inc.

### A. Warnings to Power Off Machine

Within the manual, there are numerous references to any activity on the machine which might require physical contacts:

**Page 8, under the subheading "Removing the tumbler"**



**Warning**
The following should only be done when it is certain the power has been disconnected.

**Page 10, under the subheading "Removing Protective Covers"**

WARNING! The following should only be done when it is certain the power has been disconnected.

**Page 11, under the subheading "Checking the blades"**



**Warning**
The following should only be done when it is certain the power has been disconnected. And NEVER slide your fingers down the edges of the blades lengthwise.

**Page 15, under the subheading "Adjustments"**



**Warning**
The following should only be done when it is certain the power has been disconnected. And NEVER slide your fingers down the edges of the blades lengthwise.

**Page 17, under the subheading "Tumbler Adjustment"**



**Warning**
The following should only be done when it is certain the power has been disconnected.

**Page 20, under the subheading "General Maintenance"**



**Warning**
The following should only be done when it is certain the power has been disconnected.

**Page 21, under the subheading "Cleaning"**



**Warning**
The following should only be done when it is certain the power has been disconnected.

EXHIBIT 5

EXHIBIT A

*Miller Engineering, Inc.*

### B. Sections "Important Notice" and "Important Safety Instructions"

In addition to the warnings listed above, the section entitled "Important Safety Instructions" in the Twister T2 Manual includes several warnings and instructions relating to: (1) the use of the machine during cleaning operations; (2) keeping hands away from moving parts; and (3) improper use of the machine. These warnings include:

1. *"WARNING. Because this machine is a high speed cutting unit, some special safety precautions must be observed to reduce the risk of personal injury. Careless or improper use may cause serious or even fatal injury."* (Page 5)

2. *"The machine must be unplugged before any protective covers can be removed."* (Page 6)

3. *"Make certain all protective covers are installed and hands are clear before plugging in the machine."* (Page 6)

4. *"Turn off and unplug machine before cleaning."* (Page 6)

5. *"Never plug in the unit with protective shrouds removed."* (Page 7)

6. *"Careless or improper use of this unit may cause serious or fatal injury."* (Page 7)

7. *"To reduce the risk of injury, keep body parts away from fast moving parts."* (Page 7)

8. *"To reduce risk of injury, do not wear loose clothing or jewelry when operating the machine. Sleeves should be rolled past the elbows and long hair confined. Do not wear gloves."* (Page 7)

9. *"DO NOT operate unit with protective covers removed."* (Page 8)

10. *"Do not reach inside tumbler while machine is plugged in."* (Page 8)

### C. Section "Lubrication"

The Twister T2 manual section entitled "Lubrication" on page 12 includes the following:

*"Before re-assembly of the machine, it is recommended a Twister Lube or non-stick cooking spray be applied to several parts of the unit. Depending on the material being processed, this serves two purposes: it will limit buildup of material on areas in constant contact, as well as allow for easy cleaning. The machine is designed to run without lubricant; however, constant cleaning may be required to remove leaf buildup."*

*"The following is a list of Approved products and what components should be coated.*

| | |
|---|---|
| *Nylon Brush* | *Twister Lube/Non-stick cooking spray* |
| *Knife-bar* | *Twister Lube/Non-stick cooking spray* |
| *Helix blades* | *Twister Lube/Non-stick cooking spray* |
| *Top protective cover (Inside)* | *Twister Lube/Non-stick cooking spray* |
| *Bottom protective cover (Inside)* | *Twister Lube/Non-stick cooking spray"* |

### D. Section "General Maintenance"

The Twister T2 manual section entitled "General Maintenance" on page 20 includes the following:

*"Depending on the materials being processed the machine will require different maintenance schedules. For the purpose of this manual, it will be assumed the machine will be put through tough processing conditions."*

EXHIBIT 5

EXHIBIT A

# Miller Engineering, Inc.



*"Lubrication"*

*"The machine should be lubricated with Twister Lube or non-stick cooking spray every hour."*

Miller Note: Such lubrication, even if done every hour, requires that the "power has been disconnected", per the above warning.

### E. Section "Cleaning"

The Twister T2 manual section entitled "Cleaning" on page 21 includes the following:

*"Proper cleaning will help ensure performance and prolong the life of the machine. Make sure the switches are turned off and machine is unplugged before cleaning. It is recommended the machine blades are cleaned after 4 hours of continuous use…"*



## VIII. On-Product Warning Labels

Warning labels exist on the Twister T2 Trimmer in the following locations: (1) back of the machine near the vacuum; (2) top of the machine near the inlet; and (3) inlet side of the machine, near the back. These warnings are shown in **Figures 5-7**, respectively.



**Figure 5**. Manual photo: Warning label on vacuum-side of machine that reads: "DANGER DO NOT OPERATE WITHOUT GUARDS IN PLACE.".

EXHIBIT 5

EXHIBIT A

**Miller Engineering, Inc.**



Figure 6. Manual photo: Warning label on top of machine, intake side that reads:
"WARNING HIGH SPEED CUTTING MACHINE"



Figure 7. Manual photo: Two warning labels on the side of the machine.

In **Figure 7**, the top label reads: "WARNING Only process plant matter. Failure to comply may result in equipment damage and/or bodily harm. Wear eye protection." The bottom label reads "To reduce the risk of injury, users must read and understand the instruction manual. Keep hands and body away from moving parts."

Page 9 of 11

EXHIBIT 5

EXHIBIT A

*Miller Engineering, Inc.*

## IX. Miller Preliminary Conclusions

1. Keirton management appears to have performed a reasonable hazard analysis on their machine to determine what safety features, along with what instructions and warnings (including warnings labels), were necessary to operate the machine safely.

2. I find that the operating manual appeared quite thorough and done with reasonable forethought and consistent formatting. It addressed what the manufacturer anticipated as actions which might lead to injury, particularly in relation to "disconnecting power" before making any manual contacts with the machine. While the formatting of warnings and labeling did not follow precisely the signal word and coloring recommended by certain US standards, those standards are flexible. I found the text messages were reasonable, and alternative formatting would not likely itself be responsible for noncompliance or decreased effectiveness.

3. I know of no evidence of accidents prior to this subject accident and will assume that Keirton did not know of any accidents. Thus, this would be one criterion under which the safety preventive measures that Keirton took could be considered reasonable and successful.

4. One could ask if the use of the machine at Los Suenos, which involved the cleaning of debris off the machine during live production operations, was unique to this management and this facility?

5. Cleaning of debris from the machine, while the power was on, was not recommended anywhere within Keirton's operating and warning instructions.

6. Placing hands anywhere near the machine during operation is an unsafe act which was addressed by Keirton in several ways, including a label on the machine, which was present even without referring to the manual: "Keep hands and body away from moving parts."

7. Besides the safety measures taken by a manufacturer, it is the additional responsibility under US OSHA requirements that <u>employers</u> analyze the way a machine is used in their particular facility and protect employees in accordance to OSHA regulations.

8. In spite of a manufacturer's safety efforts, it is common for safety hazards to be present in industrial machinery as delivered. Additional safety measures must be addressed relative to procedures unique to each employer's facility, with OSHA regulations to be used as required guidance for such measures.

9. If there was something unique about the Los Suenos use of the T2 Trimmer which falls outside of Keirton's previous knowledge, experience, and safety measures, then Los Suenos management was responsible to address the additional safety measures that needed to be taken.

10. Plant material characteristics can vary by growing conditions, harvesting and drying techniques, location, weather, and even new plant variety introduction. I will await testimony from Los Suenos management to understand what was unique about their processing which was apparently unknown and unanticipated by Keirton.

11. The uniqueness of the Los Suenos operation apparently caused management to allow Ms. Haslett to use her bare hand to be regularly brushing off material from the machine while it was in operation. The potential safety consequences of such actions should have been of concern to management and additional safety measures taken, such as custom guarding, per OSHA

## Miller Engineering, Inc.

requirements found in 29 CFR 1910.212 "General requirements for all machines", part (a) "Machine guarding" subpart (1) "Types of guarding" which states:

> "One or more methods of machine guarding shall be provided to protect the operator and other employees in the machine area from hazards such as those created by point of operation, ingoing nip points, rotating parts, flying chips and sparks."

12. I look forward to Los Suenos management testimony indicating, now that the guard is in place, (a) to what extent the material removal task was necessary in the first place, and (b) if the presence of the guard has interfered with or impacted their trimming operations.

13. I will note that the somewhat remote location on the machine where Ms. Haslett was injured can be considered as a "nip point" but also considered as being "guarded by location" due to its remoteness from required employee operation. I also look forward to the testimony of Keirton's representative to explain the hazard analyses considerations that lead to the various safety measures which were or were not included with the subject machine.

14. I can opine at this point that Keirton did make reasonable efforts to anticipate the safety hazards associated with their machine's operation within a production facility, and that the machine was reasonably safe for its intended cannabis trimming purposes.

These preliminary conclusions are stated with a reasonable degree of professional and scientific certainty to extent possible at this stage in the discovery. I intend to amend and supplement this report as future discovery materials are provided, as additional research is completed, and in conjunction with future oral testimony.

Respectfully Submitted,

*James M. Miller*

James M. Miller, PE, PhD